NATHANIEL CLARY *vs.* CORNELIUS GRIMES *et al.*—*December*
1841.

The evidence taken under an ex-parte commission, is not admissible against
a defendant, who is brought into the cause by an amendment made in the
plaintiff's bill, after the commission had issued.

The declarations of the assignee of a bond of conveyance, made while it was
in his possession, and while he was the holder thereof, are evidence against
a subsequent assignee of the same bond, who claimed title under the per-
son who made such declarations.

The holder of a bond of conveyance for a parcel of land, as assignee, made
and delivered a deed, by which he conveyed to G. the land described in the
bond; afterwards, to defeat G., and with a fraudulent intent to deprive his
conveyance of its intended operation, he re-delivered the bond to the origi-
nal obligee, when the assignment was erased and a new assignment endorsed
to C. by the obligee. *Held*—

That under such circumstances, neither the first assignee, nor C., who in fact
claimed under him, could seek in equity a specific execution of the con-
tract as against the obligor, or defeat G's. title.

A defendant in resisting the claim of a complainant, *is* entitled to see that the court keep within *its* established rules in determining the rights of the latter.

APPEAL from the Court of Chancery.

On the 22nd day of March, 1833, *Nathaniel Clary* filed his bill on the equity side of *Baltimore county court,* alleging, that *Henry Howard of John,* was on the 18th October, 1832, seized in fee of a part of a tract of land called *Head Quarters,* as described in the bill of complaint, and that he agreed with *Philemon Welsh* for the sale thereof, gave and delivered him his bond of conveyance, binding himself upon the payment of one hundred and fifty dollars to him · *Henry,* before the 10th March, 1833, to make a good and sufficient deed of all his right, title and interest in the same; that also, on the 28th January, 1833, the said *Henry Howard of John,* did execute and deliver to the said *Philemon Welsh,* an instrument of writing, binding himself to convey any part of the above mentioned parcel of land described in said bond of conveyance, which might be found to lay in *Baltimore* county, upon the payment of the consideration mentioned in the bond of conveyance; that *Philemon Welsh,* on the 16th February, 1833, assigned all his interest in the said bond to the complainant, who on the 9th March, 1833, exhibited his assignment to the said *Henry Howard of John,* offered to deliver up the same and pay him the said sum of $150, and tendered him a deed, and that he refused to receive the money or execute the conveyance. Prayer for a specific performance of the contract; that *Henry Howard of John,* and *Philemon Welsh* be made parties, and for general relief.

*Philemon Welsh* appeared and confessed the facts charged in complainant's bill.

*Henry Howard of John,* being summoned and not appearing, an interlocutory decree was passed against him, and a commission ordered, which was issued on the 2nd September, 1833, and closed on the 3rd August, 1835.

On the 8th September, 1833, *Henry Howard of John,* petitioned *Baltimore county court* for leave to file his answer, and

an answer was filed, (the terms of this leave do not appear,) which admitted his contract with *Philemon Welch*, but alleged that *Welch* had assigned his contract to *James Thomas;* that *Thomas* sold to *Cornelius Grimes;* that subsequently to the assignment of said agreement, which was put on the back thereof, it was erased in part, and a new assignment made, whereby the rights under said agreement were attempted to be transferred to the said complainant, and the dates of said assignment fraudulently altered, and the matter placed, or attempted to be placed, in the same situation as though the said assignment to *Thomas* had never been executed. He also denied a tender at the time and in the manner stated, and exhibition to him of the bond of conveyance as stated, &c.

On the 20th November, 1833, the complainant petitioned for leave to amend his bill, in order to make *Cornelius Grimes* a party defendant, and to aver, that the assignment to *Thomas*, relied upon in the answer of *Howard* the defendant, was obtained by duress. On the 20th November, 1833, the county court (PURVIANCE, A. J.,) passed the following order:

"Leave is granted to make *Mr. Grimes* a party defendant, "according to the prayer of the petition." And a subpœna issued for said *Grimes* on the 21st November, 1833, who being summoned, appeared and answered the bill, taking in substance the same defence as *Henry Howard of John*.

On the 14th April, 1834, the complainant suggested the death of *Henry Howard of John*, and a subpœna issued for his representatives, who were all summoned.

The defendants then by agreement waived all objections which might be taken to the testimony of *Philemon Welch*, examined as a witness for complainant, so far as they might arise from his examination without a previous order of court. On the 29th June, 1835, an order was passed directing the commissioner to return the commission, which was closed in August 1835.

On the 2nd November, 1835, the cause was transmitted to Chancery. And on the 19th January, 1837, it being before the Chancellor (BLAND,) he ordered it to stand over with leave

to amend, as allowed by the order of the 20th November, 1833, and also to amend so as to make *James Thomas* a party.

. On the 17th April, 1838, the complainant filed his amended bill, praying subpœna against *C. Grimes, James Thomas, Sarah Howard* and others, representatives of *H. Howard of John.* The alleged matters of the original bill, and the pretended claim of *Grimes* through *James Thomas*, the assignee of *Welch*, who was not made a party to this amended bill, were stated in the bill as amended.

*James Thomas* answered the bill, and alleged that though he purchased from *Welch*, yet being unable to comply with his contract, he cancelled it, returned his contract to *Welch*, who gave him up his bond. He denied a sale to *Grimes* of any interest in, or any portion of that contract.

. On the 24th January, 1840, it was agreed that the several answers filed should be taken as answers to the amended bill, as well as to the original bill.

The complainants excepted to the evidence of the declarations of *James Thomas*, as sought to be given in evidence by the defendants.

The defendant, *Cornelius Grimes*, also excepted:

1. To the competency of *James Thomas* and *Philemon Welch* as witnesses against him.

2. To the admissibility of the evidence of those two witnesses, and each of them.

3. To the admissibility of the depositions taken by complainant under the *ex parte* commission issued under the interlocutory order, because said defendant was not then a party to this cause.

4. To the admissibility of all hearsay evidence.

. At December term, 1840, the Chancellor (BLAND,) dismissed the bill, being of opinion that putting aside the depositions of the parties to this suit as coming from incompetent witnesses, and the mere hearsay detailed by other witnesses, the complainant has failed to sustain his claim to relief, by any legal and satisfactory evidence.

The complainants appealed to this court.

The cause was argued before BUCHANAN, C. J., ARCHER, CHAMBERS and SPENCE, J.

By W. F. GILES for the complainants.

J. J. LLOYD for the defendants.

ARCHER, J., delivered the opinion of this court.

As the commission *ex parte* under the interlocutory decree was ordered and issued before *Grimes* was made a party to the proceedings, we think the objection was well taken to the admissibility of the evidence against *Grimes.*

But we have, notwithstanding, examined the merits of the case upon the testimony taken under the commission, and we have arrived at the conclusion, that the complainant is not entitled to the relief he seeks. In this examination we have considered the declarations of *Thomas,* to whom the bond of conveyance from *Howard* was assigned, made before the erasure, and before assignment of the bond, by *Welch,* to the complainant, as evidence. The complainant derives his title to the bond of conveyance through *Thomas,* and any declaration made by *Thomas,* while he was holder of the bond, we consider as evidence against the complainant.

We are satisfied that *Welch* entered into the contract which is now sought to be specifically enforced with *Howard,* for the benefit of *Thomas,* and that he accordingly assigned the agreement to *Thomas.* While *Thomas* was thus in possession of the agreement by assignment, he executed a deed to *Grimes,* large enough by its terms to transfer any interest he had in the land affected by the agreement; and then to defeat *Grimes,* and with the fraudulent design to deprive the conveyance of its intended operation, he re-delivered to *Welch* the agreement to convey, when the assignment to *Thomas* was erased, and an assignment by *Welch* to *Clary* was made in its stead. Under such circumstances, it is not perceived that *Thomas* could have (had he not assigned to *Cleary,*) any claim to a specific execution of the contract; nor do we see how *Cleary,* the complainant, could stand in any better situation. The estab-

Hall's Adm'r. *vs.* Creswell *et al.*—1841.

lished rules which govern courts of equity in enforcing contracts, would forbid our interference in his behalf.

The complainant must stand or fall by the pretensions of *Thomas*, from whom he has in reality derived his pretended title, and has therefore in our judgment no claim to our interposition.

It has been objected that the conduct of *Grimes* has been harsh and oppressive. This may be so, but *Grimes* is not demanding the aid of Chancery to enforce a conveyance, but is resisting the claim of the complainant; and he is entitled to see that the court keep within its established rules in determining the rights of the complainant,

DECREE AFFIRMED.