RICHARD A. EDES, and others *vs.* HENRY F. GAREY and THOMAS M. LANAHAN, surviving obligors of THOMAS J. CARSON.

*Executor and trustee—Remedy against sureties for devastavit Committed by an Executor—Jurisdiction of Orphans' Court—Notice—Estoppel—Equity pleadings.*

Although an executor strictly speaking may be considered as a trustee, and as such may be held accountable in a Court of equity for a proper administration of the trust, yet it is clear that the sureties maintain no such relation. On the contrary, their obligation being one of contract, the remedy for a breach of it must, as a general rule, be by an action at law on the bond.

If there be any exception to this general rule, there must be *special and peculiar circumstances*, making the exercise of jurisdiction necessary to the protection of the rights and interests of parties.

Under the will of *E.*, C. was appointed both executor and trustee. On a bill in equity against the sureties on the bond given by C. as executor, it was alleged that as executor C. received large sums of money belonging to the estate, which by his act were wholly lost and wasted. That the Orphans' Court upon his application passed an order directing him to transfer to himself, as trustee under the will, the amount remaining in his hands as executor. That under the will it was his duty as executor to have kept together said estate until the death of the testator's mother, a contingency which had not happened when said order was passed; that the order was *ex parte*, and never in fact and in good faith complied with by C., nor was any security given by him for the money thus unlawfully directed to be transferred to himself as trustee, except an *unrecorded conveyance of certain lots of ground in the City of Baltimore to himself as trustee for the parties in interest under the will*, which was found among his papers after his death. That under a creditor's bill subsequently filed by the creditors of C., these lots were sold and the proceeds of sale brought into Court for distribution, and the complainants came in by petition in that case claiming as general creditors of C., and also *claiming* under *said unrecorded deed to himself as trustee, a specific lien upon the proceeds of the sale of said lots of ground.*

Edes, *et al. vs.* Garey and Lanahan.

That the specific lien thus claimed was allowed by the Court, and the entire net proceeds of said sale was under the order of the Court paid to them. And that the defendants had personal knowledge of the above matters from having been the counsel of C. as executor and trustee, and especially advising him in regard to said transactions. HELD:

1st. That the above allegations when considered separately or together present nothing more or less than an ordinary case of a *devastavit* by an executor, for which the complainants had a *plain, adequate and complete remedy at law.*

2nd. That there was not a particle of evidence necessary to prove either one or all of the material facts averred in the bill, but what could be offered in a Court of law, and upon the facts thus established, it was within the province of a jury under instructions from the Court to have determined the rights and liabilities of the parties.

3rd. That the death of C. the executor, in no manner affected the liability of his sureties as surviving obligors in an action at law.

4th. That there was nothing in the record to justify the jurisdiction of a Court of equity, upon the ground of complication of accounts, or mutual and adverse claims, or controlling equities.

5th. That under the facts and circumstances disclosed by the record the complainants were precluded from recovering against the defendants as sureties of C.

6th. That the order of the Orphans' Court, directing C. to transfer to himself as trustee, under the will, the amount remaining in his hands as executor, was passed by a Court having the jurisdiction of subject-matter, and the complainants as parties in interest under the will are presumed to have had notice of it.

7th. That common sense and common justice require that, having claimed and having received the entire proceeds from the sale of the property conveyed by the unrecorded deed upon the express ground, that it was executed by C. to secure the complainants on account of the money belonging to them, and which he held as trustee under the will, they should not be permitted to deny those facts in a suit brought against the sureties on the administration bond.

A defendant may demur to part of the bill and answer the rest, provided the demurrer and answer apply to different and distinct parts of the bill, and be not inconsistent with each other.

APPEAL from the Circuit Court of Baltimore City.

The nature of the bill in this case is sufficiently stated in the opinion of the Court; see also, the cases of *Pairo vs. Vickery,* 37 *Md.,* 467, and *Carson vs. Phelps, Trustee,* 40 *Md.,* 73.

The defendants demurred, 1st, Generally; 2nd, To the jurisdiction; 3rd, For want of proper parties; and also made answer to such part of the bill as alleges as follows:

"Of all which premises the defendants have personal knowledge, having been of counsel for said Carson, and especially advising him relative to the transactions, deeds, mortgages, accounts and order hereinbefore mentioned—which said alleged order was passed on the alleged application of said Carson on their advice."

Which allegation they denied.

The demurrer having been sustained by the Court, (BROWN and PINKNEY, J.,) a replication was filed and testimony taken by the complainants. After which the Court below, (BROWN and PINKNEY, J.,) passed a decree dismissing the bill.

The complainants appealed.

The cause was argued before BARTOL, C. J., STEWART, GRASON, ALVEY and ROBINSON, J.

*John P. Poe* and *Charles E. Phelps,* for the appellants.

The Court below erred in first denying the jurisdiction of equity by ignoring special circumstances, which embarrassed the legal remedy, and then using those very circumstances as if the case were in a Court of law, to defeat the complainants upon the merits. It also erred in ignoring all the testimony in support of material allegations in the bill denied by the answer, although not excepted to, nor contradicted.

There is no real repugnance between the present claim for the balance due upon the bond, and the previous par-

tial recovery in the creditors' suit. It is clear that Carson, upon obtaining the order of the Orphans' Court, and passing the final account of 8th May, 1867, had *not,* by means of this merely formal and paper transfer, effected the discharge of himself and his sureties, from their existing liability already fixed by the previous *devastavit,* that he had *not* divested the right of action on the bond then vested in the legatees by condition broken, that he had *not* duly and in good faith, transferred the fund supposed to be in his hands as executor, to himself as trustee, and had in nowise relieved himself of the duty of making *real restitution* of the assets which he had unlawfully abstracted, and for which he still continued a *defaulting executor,* indebted to the estate of Edes. *Seegar vs. State.* 6 *H. & J.,* 166; *Smith vs. Gregory,* 26 *Grat.,* 248; *Conkey vs. Dickinson,* 13 *Met.,* 54; *Ordinary vs. Shelton.* 3 *McCord,* 412; *State vs. Reany,* 13 *Md.,* 236. This restitution could only be made by some act amounting to an identification of the trust fund, by ear-marking, or investing in property of equivalent value. So far from his being relieved of this obligation, by his *ex parte* proceedings in the Orphans' Court, he had on the contrary, reinforced that obligation. 1st, by the exigency of the order itself, which being in terms *prospective,* and Carson being at the time a *defaulting executor* who had wasted the whole of the assets, could only be gratified by a *bona fide* and substantial compliance, and 2nd, by the mandatory provisions of the statute requiring *security. Code, Art.* 93, sec. 10; *Newcomb vs. Williams,* 9 *Met.,* 534; *Prior vs. Talbot,* 10 *Cush.,* 1. Being thus under an express unsatisfied obligation to make a *substantial transfer* from himself as executor, to himself as trustee, at the time he executed to himself as trustee, the deed of 1868, the case comes within the equitable principle, that *where a man is bound to do an act, and he does one which is capable of being construed to have been done in fulfillment of his obligation it*

*shall be so construed, and that either by way of perform-
ance or part-performance according to its extent. Smith's
Man. Eq.,* 28, 29, and cases cited.

The deed being a valid, equitable security, although
unrecorded, was a restitution and a reduction of damage
*pro tanto,* and *quo ad* the fund actually secured by it, and
finally realized from it, was a substantial compliance with
the order of the Orphans' Court, and completed the transfer *pro tanto.* Here was a part of the fund restored and
identified, and *as to that part,* Carson was in possession *as
trustee,* under the order thus partially complied with,
while *as to the balance,* he was still a *defaulting executor,*
indebted to the estate, bound to make restitution, and
liable on the breach of condition. As to *this balance,* the
order still continued operative, and unsatisfied, and the
sureties of course equally bound with their principal.
The litigation in the previous creditors' suit was confined
to the proceeds of sale of the real estate secured by that
deed, and especially limited to a contract between the two
auditor's accounts distributing those proceeds, 40 *Md.,* 95 ;
while the litigation in this suit, is confined to the unse-
cured floating balance of the debt due by Carson, *as execu-
tor,* outside of the security of that deed, and beyond the
range of those accounts.

There is therefore no blowing hot and cold between the
two proceedings, and the apparent inconsistency dis-
appears the moment they are critically analyzed and com-
pared.

The general rule recognized in 40 *Md.,* 98, (top,) is not
denied here, nor the application of that rule to the subject-
matter then before the Court. Where the same person is
both executor and trustee, and an order of the Orphans'
Court, directs him to transfer the fund in his hands as
executor, there is no doubt of the general rule that, after
that he is in possession as trustee. The *qualification* of
that rule is, that the rule ceases to operate where there is

Edes, *et al. vs.* Garey and Lanahan.

*nothing for it to operate upon,* and where its operation is arrested by the *intervention of vested rights in third parties,* as in the case of a completed previous *devastavit.*

The limitation to that again, is, that *where* the *devastavit* has been purged either in full or in part, and the intervening rights satisfied, either in whole or in part, the transfer will operate to *the extent* of the restitution. In 40 *Md.,* 73, such partial restitution had been made, the resulting proceeds were in Court, and it *was with respect to those proceeds* that the Court properly held the rule operative and the transfer effected. But the Court was not asked to go further, and consider all the qualifications and limitations of the rule in its application to another and different subject-matter. If the Court had been asked to do so, it would probably have replied that it had quite enough to do, without listening to moot points.

Indeed, but for the objection of *multifariousness,* the sureties could have been made parties in the creditors' suit, and an account taken and decree passed against them for the balance due upon the bond, and that in the same decree which allowed the claim under the deed. *State vs. Digges,* 21 *Md.,* 243.

Identically the same result which but for multifariousness, might have been reached in one suit, it is now proposed to attain as the combined result of two successive suits.

There is no foundation for the charge that other creditors were prejudiced, much less defrauded by the lien claimed and allowed in the prior suit, since the case was not one for a *marshaling of securities,* and it was wholly immaterial to the general creditors, whether the preferred creditors had a further and ultimate security beyond their reach, in the shape of an action for unliquidated damages, and they could not have resisted the enforcement of the lien in any event, since the deed was based upon an unquestionably valuable consideration, to wit: the *existing*

*indebtedness.* *Alexander vs. Ghiselin,* 5 *Gill,* 185 ; *Exton vs. Scott,* 6 *Sim.,* 39.

The sureties' right of *subrogation,* which the legatees were enforcing for the benefit of the sureties as well as their own, was a *paramount equity* which the other creditors could not defeat or impair. *Franer vs. Yingling,* 37 *Md.,* 498 ; 2 *Am. Lea. Ca.,* 402, 458, 477.

But the estoppel set up may be disposed of upon other and well settled principles : 1. *Want of mutuality.* The appellees not being themselves concluded by the former proceedings, *Iglehart vs. State,* 2 *G. & J.,* 245, and having been in no way prejudiced but benefited thereby, the attempt to estop with them is against all principle and precedent. *Alexander vs. Walter,* 8 *Gill,* 239 ; *Homer vs. Grosholz,* 38 *Md.,* 525 ; *Bramble vs. Twilley,* 41 *Md.,* 435.

2. *Want of certainty.* In such estoppels nothing is to be taken by argument or inference. There must be *certainty to a certain intent in every particular.* *Sto. Eq. Plea.,* sec. 240 ; *C. Litt.,* 303 a, 352 b.

The petition in the creditors' suit contains no allegations that can be squared with this requirement, even if their effect can be extended beyond the fund in controversy in that suit, to a suit between different parties and for a different subject-matter. But whatever construction may be put upon them, it is well settled that such averments are not conclusive in another proceeding. 1 *Tay. Ev.,* secs. 745, 746, 786 ; 2 *Tay. Ev., sec.* 1560, *and cases cited.*

3. Partial satisfaction under a decree is no bar to further remedies for the *unsatisfied balance.* *Loney vs. Bailey,* 43 *Md.,* 22 ; 7 *Rob. Prac.,* 432.

In further support of the *jurisdiction,* it was argued by the appellants' counsel that the case was distinguished from ordinary suits on testamentary bond, by a variety of special and peculiar circumstances, which they referred to in detail under several topics, viz : complicity of accounts ; appropriation of payments ; subrogation ; trust ; accident ;

constructive fraud ; marshaling of assets ; marshaling of securities; suretyship; solicitor. *Brooks vs. Brooks,* 12 *G. & J.,* 306 ; *Spottswood vs. Dandridge,* 4 *Munf.,* 289 ; *Carow vs. Mowatt,* 2 *Edes. Ch.,* 57; *Moore vs. Armstrong,* 9 *Peters,* 697 ; *State vs. Diggs,* 21 *Md.,* 240 ; *Thurston vs. Blackiston,* 36 *Md.,* 501 ; *Flickinger vs. Hull,* 5 *Gill,* 60 ; *Barnes vs. Compton,* 8 *Gill,* 392.

There has been no relaxation in Maryland of the strict rule of chancery practice applicable to *demurrers,* which are discouraged by our Courts. *Alex. Ch. Prac.,* 58; *Mewshaw vs. Mewshaw,* 2 *Md. Ch.,* 14 ; *Sto. Eq. Plea., sec.* 454.

The demurrer in this case not clearly expressing the particular parts of the bill which it was designed to cover, *is overruled by the answer. Story's Eq. Plea., secs.* 457, 458. If not overruled by the answer it can only be because the demurrer is held not to be a defence to that part of the bill answered. But the answer being in great part overthrown by the proof, and the allegations of the bill traversed being material, supported by testimony, and left without defence, the rule applies that a defence, whatever its form, must profess to be a *defence to the whole bill,* and the demurrer must therefore be overruled. *Alex. Ch. Prac.,* 57. In either case there is nothing left upon the record which objects to the jurisdiction. *Knight vs. Brawner,* 14 *Md.,* 1.

The defendants should at all events have denied, (if they could,) the allegation in the bill that the exigency of the order of the Orphans' Court *" was never in fact and substance, and in good faith complied with,"* and also the allegation, that *" said order was not complied with by said Carson, except colorably and on paper, by a mere fictitious entry on his books."* These admissions have clearly let in equity. *Kerr on Frauds, (Am. Ed.,)* 360-8, *and cases cited.*

*Orville Horwitz* and *I. Nevett Steele,* for the appellees.

The provisions of the will, with the final settlement by the executor, and the order of May 8th, 1867, by the Orphans' Court, directing Carson, executor, to pay over the money in his hands to himself as trustee, and his final settlement under said order, released the defendants from liability on the bond.

The statements made in the bill for the purpose of avoiding this order of 1867, are not sufficient for that purpose. No previous *devastavit* or contemporaneous insolvency being alleged or set out in the bill.

It is only charged that Carson mixed the money of the estate with his own, and lost or did not account for *that specific money.* No insolvency is charged upon Carson until the 11th of May, 1869, when they say "Carson died greatly insolvent." This was two years after the order of the Orphans' Court of 1867. This is certainly no charge of insolvency on or before May 8th, 1868. A charge of insolvency "*ought to be so distinctly introduced as to exclude all conclusions to the contrary.*" See *Young vs. Lyon, et al.,* 8 *Gill,* 168.

The order of May 8th, 1867, being by a Court of competent jurisdiction, and *known to defendants,* and not appealed from, is conclusive, and cannot be set aside in a collateral proceeding. See deed of April 27th, 1863.

If the complainants have any ground of action against these defendants, the same is triable and determinable at law, and ought not to be inquired of by this Court.

*Williams on Executors,* p. 538, says: "There is no case in England in which sureties on the bond of an executor have been made to answer in equity." See *Bolton vs. Powell,* 14 *Bevan Cases in Chy.,* 286. The case cited in *Brooke vs. Brooke,* 12 *G. & J.,* 306, were, under the laws of certain States, by which "if an executor commits a *devastavit,* suit upon his bond against his securities cannot be maintained, until the *devastavit* against the executor be

established in a suit at law." In such cases, the death of the executor before suit at law against him would of necessity give jurisdiction in equity. But no such provision as to suits by *legatees* exists in Maryland.

Carson made a final settlement in the Orphans' Court on 8th May, 1867. That is *prima facie* evidence of the state of the account; the complainants admit its correctness in the bill. The only complication, if any, grows out of their dealings with Carson without the knowledge and consent of the sureties. But even these were adjusted in case of Heflebower.

Even if the complainants could go into equity for an account, yet Carson's administrators, necessary parties thereto, are not made defendants in the cause.

The bill, in brief, discloses the full discharge of these sureties.

1. By the settlement of the trust under the law and the terms of the will.

2. By the order of Orphans' Court of May 8th, 1867.

I. By the true construction of Edes' will, Carson was both executor and trustee ; but the words "by my executor hereinafter appointed" are merely *descriptio personæ*, and convey no interest to him after his settlement with the Orphans' Court. *Perkins vs. Lewis*, 41 *Ala.*, 649, and cases cited.

*Rieman vs. Peters*, 2 *Md.*, 104, was decided upon the singular clauses of that will, and does not apply here.

Admitting this construction, then, on the final settlement of the executor, the money on hand by operation of law vested in him as trustee. *State vs. Jordan*, 3 *H. & McH.*, 180 ; *Seeger's Estate vs. State*, 6 *H. & J.*, 162-165 ; *Watkins vs. The State*, 2 *G. & J.*, 220-225 ; *Hanson vs. Worthington*, 12 *Md.*, 440 ; *Taylor vs. Debois*, 4 *Mason*, 133.

II. But whatever the provisions of the will, they cannot divest the Orphans' Court of the power conferred by Art. 93, sec. 10, of the Code.

The order of 8th May, 1867, *directed* Carson to transfer to himself as trustee the balance of money in his hands. This he did in his final account, which was approved by that Court. *Vandever's Appeal*, 42 *Penn. St. R.*, 74.

But suppose the Orphans' Court erred in passing this order, yet it was competent for them to pass it, and it was final until reversed. *Gunther vs. The State*, 31 *Md.*, 28-32.

The complainants could have appealed from this order within thirty days. Even if they had no notice of it at the time, yet they were bound to appeal or file a petition to set it aside, within thirty days after actual *knowledge* of its passage. *Redman vs. Chance*, 32 *Md.*, 42.

The bill admits such *knowledge* by them, and even adopts that order and Carson's receipt of the money *as trustee* as the consideration of the deed of 27th April, 1868.

The order then is valid, and cannot be impeached collaterally. *Cockey vs. Cole*, 28 *Md.*, 276 ; *Porter vs. Timanus*, 12 *Md.*, 283.

It is submitted in *Rieman vs. Peters*, that if the executors had not appealed, the transfer of the personal property to the *trustees* would have been a finality.

But the bill alleges that Carson did not comply with the order, as specially argued and set out by complainants, yet at the same time, admits his final settlement, in which he credits himself with the order, and admits his ability to answer the demand.

Distributees and residuary legatees have *no lien* on any specific money, or indeed upon any assets in the hands of the executor. *Salmon vs. Clagett*, 3 *Bland's Ch'y*, 169, citing 1 *Atkyns*, 463 ; see *Perry on Trusts*, sec. 847.

There could be no default until the legacies were due, which is after final settlement. *Art.* 93, *sec.* 119, *of Code; Lowe vs. Lowe*, 6 *Md.*, 354; *Seeger vs. The State*, 6 *H. & J.*, 162; 2 *Williams on Ex'rs*, *p.* 1279, *note* 6, *sec.* 446.

The complainants having taken the whole proceeds of the sale of the property, are estopped from denying its full force and effect. 11 *Gill & J.*, 314, 326, 327.

By this deed, all claims upon the bond were released by the acceptance of the property conveyed to them. It was a substitution. *Mailhouse vs. Frazier,* 25 *Md.*, 96–105.

These complainants having, in *Heflebower's Case,* relied upon certain facts, and thereby recovered certain sums of money, are not at liberty now to deny, 1st, that the order of May 8, 1867, was valid and properly passed. 2nd, That Carson was solvent. 3rd, That the assets of the estate were in Carson's hands as trustee, and not as executor, and hence are estopped from proceeding against the sureties on the executor's bond.

The effort made by the introduction of evidence to deprive one of the sureties, Thomas M. Lanahan, of the defences made by the demurrer, has wholly failed.

If the dealings with the sureties released one of them, Garey, in reference to whom there is no pretence of even knowledge of the execution of the mortgage or deeds in question, then the proceeding in this case being against them jointly, both are released.

ROBINSON, J., delivered the opinion of the Court.

This is a bill in equity by residuary legatees, to enforce the personal liability of sureties on a testamentary bond for a *devastavit*, alleged to have been committed by an executor.

Such a proceeding it must be admitted, is under our practice an unusual one, for although an executor strictly speaking, may be considered as a trustee, and as such, may be held accountable in a Court of equity for the proper administration of the trust, yet it is clear the sureties maintain no such relation. On the contrary, their obligation being one of contract, the remedy for a breach of it must as a general rule be by an action at law on the bond.

No case can be found in this State in which it has been held that they are liable in equity. The question was not decided in *Knight and Wife vs. Brawner, et al.*, 14 *Md.*, 1, for the reason that no objection having been made in the Court below as to its jurisdiction, this Court was precluded by the Act of 1841, chap. 163, from considering such an objection on appeal.

The decisions however in analogous cases are all with one accord against the jurisdiction now claimed. In *Boteler & Belt vs. Brooks*, 7 *G. & J.*, 143, where an application was made to the Chancellor to compel the sureties on a trustee's bond to bring into Court, the proceeds of sale of mortgaged premises sold in pursuance of a decree in equity, it was held, that although the trustee as an officer of the Court, was bound to obey its orders in all matters concerning the trust, yet the sureties on his bond maintained no such relation. The Court said :

"They have no official duties to perform ; assume no responsibility to the Court, but in general, enter into a merely pure legal contract of suretyship, incapable of coercion, except through the medium of the appropriate forum for the enforcement of such contracts—a legal tribunal."

The doctrine thus laid down, was sanctioned and approved in *Brooks vs. Brooks, et al.*, 12 *G. & J.*, 319, subject however, say the Court, as all other general notes, to some exceptions. In that case, a trustee to sell real estate, under a creditor's bill, wasted the funds, and died before an audit was made, without leaving any estate upon which an administration could be had, and it was held, that inasmuch as an action at law could not under such circumstances be maintained on the trustee's bond, the sureties thereon, ought to be held accountable in equity, otherwise the parties entitled to the trust fund, would be without remedy.

The practice in England is strictly in accord with these decisions, and in *Williams on Executors, vol.* 1, *page* 538,

.it is said: "That no suit in the first instance, has ever been instituted in equity against the obligors of a testamentary bond," in support of which, the author refers to *Bolton vs. Powell*, 14 *Beav.*, 275. In that case, a bill was filed by the *administrator de bonis non*, of David Bolton, against the representatives of William Bolton and the sureties on his bond, alleging a *devastavit* by the said William as administrator of David, and Sir JOHN ROMILLY, Master of Rolls, said :—

"The proper course as it appears to me, was, to have instituted proceedings in a Court of common law in the name of the obligee of the bond, for the purpose of enforcing the penalty. I am confirmed in that view of the case by the circumstance, that no case has been found in equity (though if the jurisdiction existed in equity, there must have been many,) in which any such suit has been instituted in the first instance in a Court of equity."

If there be any exceptions to the general rule thus laid down, it is clear both upon principle and upon authority, that there must be *special and peculiar circumstances* making the exercise of jurisdiction necessary to the protection of the rights and interests of parties. The inquiry then is, are there any *such facts and circumstances in this case?*

Under the will of Edes, Carson was appointed both executor and trustee, and the bill alleges, that as executor he received large sums of money belonging to the estate, which he transferred to the banking house of Carson & Co., of which he was a member, whereby the same became wholly lost and wasted—that the Orphans' Court, upon the application of Carson, passed an order directing him to transfer to himself as trustee under the will, the amount remaining in his hands as executor—that under the will it was his duty as executor to have kept together the whole estate until the death of the testator's mother, a contingency which had not happened when said order was

passed—that the order was *ex parte*, and never in fact, and in good faith complied with by Carson; nor was any security given by him for the money thus unlawfully directed to be transferred to himself as trustee, except an *unrecorded conveyance of certain lots of ground in Baltimore City to himself as trustee for the parties in interest under the will*, which said unrecorded conveyance was found among his papers after his death.

That subsequently, a bill was filed by one Heflebower, in behalf of himself and other creditors of Carson, alleging an insufficiency of the personal estate to pay his debts, and praying for the discovery and sale of the real estate, and that under these proceedings, the several lots of ground conveyed by Carson to himself as trustee, to secure the appellants, parties in interest under the will, were sold, and the proceeds of sale brought into Court for distribution. That among other creditors, the complainants came in by petition, claiming to be general creditors of the *decedent* for and on account of the balance due by him on his final administration account, also for money received by him under a voluntary deed of trust executed by the complainants, and also *claiming under the unrecorded deed to himself as trustee, a specific lien upon the proceeds arising from the sale of the several lots of grounds* mentioned in said deed. That the specific lien and preference thus claimed, was allowed by the Court, and the sum of eleven thousand, nine hundred and sixty-three dollars and fifteen cents, being the entire net proceeds of sale arising from the sale of said lots, was under the order of the Court, paid to the complainants.

The bill further alleges, the appellees had personal knowledge of these matters, having been of counsel for Carson, as executor and trustee, and especially advising him in regard to said transactions.

These are the special facts and circumstances which the appellants contend, ought to exempt this case from the

operation of the general rule of law, and sufficient to justify the exercise of jurisdiction by a Court of equity, for the purpose of enforcing the personal liability of the sureties on Carson's administration bond; and yet when considered separately or together, they present nothing more or less than an ordinary case of a *devastavit* by an executor, for which the complainants had a *plain, adequate and complete remedy at law*. There is not a particle of evidence necessary to prove either one or all the material facts averred in the bill, but what could be offered in a Court of law, and upon the facts thus established, it was within the province of a jury under instructions from the Court, to have determined the rights and liabilities of the parties.

The death of Carson, the executor, in no manner affected the liability of his sureties as surviving obligors in an action at law; and as to complication of accounts, or mutual and adverse claims, or controlling equities, we have not been able to find anything in this record, to justify the jurisdiction of a Court of equity upon such grounds. On the contrary, under the proceedings in Heflebower's creditors' bill, Carson's entire estate, real and personal; the names and amounts due to his creditors; the amount remaining in his hands as executor under the will of Edes: the sums received under the *conventional deed of* 1866; the amount received by these complainants by virtue of their specific lien, under the unrecorded deed to Carson, as trustee for parties in interest under the will; all of these matters are ascertained, and if the appellees were liable as sureties on the testamentary bond, the jury could have had but little difficulty in ascertaining the precise amount which the appellants were entitled to recover. If the sureties on a testamentary bond are under such circumstances, to be held liable in equity, it is difficult to imagine a case in which the jurisdiction may not be exercised.

For these reasons we are of opinion that the demurrer to the bill was properly sustained, and here we might rest our decision, but inasmuch as the whole case has been fully argued and considered, we deem it proper to add, that even conceding the jurisdiction now claimed, we are of opinion that under the facts and circumstances disclosed by the record, the appellants are precluded from recovering against the appellees as sureties of Carson.

The clause in the will under which this controversy arises, is certainly obscure, and it may not be easy to determine when the duties and liabilities of Carson as executor ceased, and those as trustee began. Be this as it may, one thing is certain, the Orphans' Court considered his duties as executor at an end, upon the passage of his final administration account, and accordingly they directed the funds thus remaining in his hands, to be transferred to himself as trustee under the will. This order was passed by a Court having jurisdiction of the subject-matter, and of which the appellants, parties in interest under the will, are presumed to have had notice. No objection was made to the action of the Orphans' Court in the premises, nor has any appeal been taken from the order thus passed. But this is not all. When a bill was filed by the creditors of Carson for the sale of his real estate to pay debts, we find these appellants coming into Court by petition, and alleging that the Orphans' Court, by its order of May 8th, 1867, directed Carson to *transfer to himself as trustee under the will, the money, and also the stocks remaining in his hands as executor, and that they had in the life-time of Carson, expressly requested him to secure the money thus in his hands as executor and trustee,* and that in pursuance of such request, he did, by a deed executed but not recorded, convey to himself *as trustee for the appellants,* certain lots of ground in Baltimore City ; that these lots had been sold under the decree passed in the suit of the creditors. The appellants further claimed that under the unrecorded deed

to Carson himself as trustee, they were entitled to a *specific lien upon the proceeds arising from the sale of said lots.*

Here then is not only a recognition by these appellants of the order of the Orphans' Court, but an admission also that under it, Carson had transferred to himself, as trustee, the money remaining in his hands as executor, and that the unrecorded deed was executed *expressly at their request* and for the purpose of securing the money *thus held by him as trustee.*   The specific lien thus set up by the appellants was allowed by the Court, and they received the entire proceeds of the sale of the property conveyed by the unrecorded deed, amounting to over eleven thousand dollars.

Having thus treated Carson as trustee under the will, and having received the proceeds of the property which was conveyed by him to secure the money thus held by him, as trustee, the appellants now sue the sureties on his administration bond, and say that it was his duty under the will, to have kept the estate together as executor until the death of the testator's mother, and that the order of the Orphans' Court is invalid, and that Carson never in fact transferred to himself as trustee under the will, the money and funds remaining in his hands as executor. This is certainly claiming at one time in one right, and then at another time setting up a claim not only inconsistent with, but in fact utterly denying the first.   "A man shall not be allowed " says the Court of Exchequer, in *Cave vs. Mills,* 7 *H. & W.*, 927, "to blow hot and cold, to claim at one time and deny at another."

Nor is it any answer to say the claim to and receipt by the appellants, of the entire proceeds arising from the sale of the property mentioned in the unrecorded deed, worked no injury to the sureties on Carson's administration bond. If the money remaining in his hands as executor was not in fact transferred by Carson to himself, as trustee under the will, and if the unrecorded deed was not as it purports on its face, executed for the purpose of securing the money

thus held by him, then the claim to and receipt by the appellants of the eleven thousand dollars, being the entire proceeds arising from the sale of the property thus conveyed, was in law a fraud upon the general creditors of Carson, who upon the facts now alleged by these appellants, were entitled to participate in the distribution of of that fund. And whether you say the appellants are estopped by such proceedings, or by whatever name you may call it, common sense and common justice requires that having claimed and having received, the entire proceeds from the sale of the property conveyed by the unrecorded deed, upon the express ground that it was executed by Carson to secure these appellants on account of the money belonging to them and which he held as trustee under the will, they shall not now be permitted to deny these facts in a suit brought against the sureties on the administration bond.

Before concluding this opinion, it is but proper to notice an objection made by the counsel for the appellants on the ground that the respondents had demurred to part of the bill, and answered the rest of the bill. The right to do so, provided the demurrer and answer apply to different and distinct parts of the bill, and be not inconsistent with each other, is too well settled to be questioned. See *Story on Equity Pleading, sec.* 442, and the cases cited. The demurrer in this case was properly sustained, and the decree below will be affirmed.

*Decree affirmed.*

(Decided 1st March, 1877.)