In the Matter of William Glenn HUNTER, Debtor.

Carroll KRAFT, Plaintiff,

v.

William Glenn HUNTER, Defendant.

Bankruptcy No. 81–02070–SJ.
Adv. No. 81–1576–SJ.

United States Bankruptcy Court,
W. D. Missouri, St. Joseph Division.

Jan. 13, 1982.

524

Stephen W. Mendell, St. Joseph, Mo., for plaintiff.

James H. Thompson, Jr., Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT OF DISMISSAL OF COMPLAINT FOR A DECREE OF NONDISCHARGEABILITY FOR FAILURE TO MAKE A SUBMISSIBLE CLAIM

DENNIS J. STEWART, Bankruptcy Judge.

In his complaint herein for a decree of nondischargeability, the plaintiff contends that an indebtedness to him was created by the defendant's fraud within the meaning of section 523(a)(2) of the Bankruptcy Code in the sum of $5,000.00 and is therefore nondischargeable in bankruptcy.

A trial of the action was conducted by the court of bankruptcy on December 21, 1981, in Kansas City, Missouri, whereupon the plaintiff appeared personally and by Stephen W. Mendell, his counsel, and the defendant appeared by James H. Thomp-

son, Jr., his counsel. The plaintiff thereupon adduced evidence to the following effect: The defendant was one of his salesman supervisors in distributing seed corn which was produced by the wholesale concern named O's Gold. The plaintiff operated in the capacity of president and general manager of Carroll Kraft, Inc. He engaged the defendant as a salesman supervisor under an oral employment agreement which allegedly made the supervisor responsible for all unpaid purchases of seed corn. It was also possible for the defendant to obtain commission advances which were to be repaid, if unearned, at the yearly settlement time, which the plaintiff testified was in July. The only such advance which is specifically evidenced is one obtained on July 1, 1980, in the sum of $700, repayable on July 1, 1981, if unearned. But Mr. Kraft testified that, as of the date of the defendant's petition for relief under title 11 of the United States Code, he owed Mr. Kraft a total of $2300 or $2400 in unearned commissions. Further, there were other "shortages" in seed corn for which the defendant was responsible as supervisor, so that the total bill owed to the plaintiff at the date of the title 11 petition was $4,388.20. By means of a guaranty of the defendant's account with O's Gold which plaintiff had executed (and of which the defendant knew), that amount had had to be paid to O's Gold by the plaintiff. The defendant, according to plaintiff's testimony, accepted employment with a competitor shortly before he formally terminated his employment with the plaintiff. Plaintiff contends that some of the unearned commissions or other value, although there is no evidence as to how much, was obtained by the defendant after he had in fact accepted the employment with a competing firm.

On December 18, 1980, the plaintiff brought suit against the defendant in the Circuit Court of Buchanan County. See *Kraft v. Hunter,* Case No. CV680–702–AC. The action was in two counts. Count I sought recovery of the $4,388.20 as a debt "on an open account." Count II sought the same $4,388.20 plus the sum of $611.80 in

"exemplary" or "punitive" damages on the basis of the following allegation:

"Plaintiff reallages and restates by this reference in this Count each and every allegation of each and every paragraph of Count I herein.

"Plaintiff further states that defendant became indebted to Plaintiff and created the open account with the intent to defraud Plaintiff in that Defendant knew or should have known that when he created said open account ... and became indebted to Plaintiff that he did not intend nor did he have the means to satisfy his account with Plaintiff."

According to the records of the state court proceedings which have been adduced in evidence in this action, on January 20, 1981,

"Plaintiff appears in person and by atty ... Defendant appears in person. Plaintiff amends count II of petition by deleting exemplary damage *allegation and* request. Def. consents to judgment on amended count II in Plaintiff's Petition in the sum of $4,388.20.

"Wherefore it is hereby ordered and adjudged that Plaintiff recover from defendant the sum of $4,388.20 together with costs." (Emphasis added.)

The court then entered a judgment entry also dated January 20, 1981, to the following effect:

"Now on this 20th day of January, 1981, this cause having come regularly on for hearing and the plaintiff appearing in person and by his attorney of record, Stephen W. Mendell, and the defendant appearing in person and the court being fully advised in the premises by the confession of the defendant to judgment being entered against him on Count II of plaintiff's Petition for Damages herein after the plaintiff waived and withdrew his claim for punitive damages in the sum of Six Hundred Eleven and 80/100 ($611.80):

"It is, therefore, ORDERED, ADJUDGED and DECREED that judgment is hereby entered and granted in favor of plaintiff and against defendant in the sum of Four Thousand Three Hundred Eighty-eight and 20/100 ($4,388.20) by reason of the defendant's confession to judgment under Count II of plaintiff's petition herein wherein it is alleged in Count II of plaintiff's petition herein that defendant by virtue of certain fraudulent actions damaged the plaintiff in said sum and to which defendant confessed. It is further ordered that the cost of this action be taxed against the defendant. It is so Ordered."

■ At the conclusion of the plaintiff's evidence, in the course of which the foregoing facts were demonstrated (and which have been found by viewing the evidence in the light most favorable to the plaintiff), the court granted the defendant's motion for judgment of dismissal on the grounds that a submissible case had not been made. This is true for the following reasons. The fact that the state court judgment may have sounded in fraud does not mean that the bankruptcy court must grant a decree of nondischargeability based thereupon. In actions brought in the bankruptcy court under section 523(a)(2) of the Bankruptcy Code, a prior state court adjudication is not res judicata and "the bankruptcy court is not confined to a review of the judgment and record in the prior state court proceedings when considering the dischargeability of respondent's debt." *Brown v. Felsen*, 442 U.S. 127, 138–139, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979). The issue of dischargeability is for the bankruptcy court alone to consider and determine. *Id.* at 135, 99 S.Ct. at 2211. But "(i)f, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of section (523), then collateral estoppel, in the absence of countervailing statutory policy, would bar litigation of those issues in the bankruptcy court." *Id.*, at 139, n. 10, 99 S.Ct. at 2213, n. 10. But collateral estoppel is inappropriate when the prior judgment was a consent judgment or a confessed judgment without any hearing or determination of the merits by the court itself. See 1B Moore's Federal Practice para. 0.444, p. 4002 (1980), to the following effect:

"Collateral estoppel has been characterized as a more dangerous doctrine than res judicata because of the possibility that a party will be concluded by it in a subsequent case that was not foreseeable at the time of the suit in which the concluded issue was litigated. It is certainly true that preclusion of an otherwise just result by the conclusive effect of collateral estoppel is more difficult to justify when the preclusion could not reasonably have been foreseen by the concluded party than when it could have been. Justice, then, is probably better served if the principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, or to issues determined by the parties, unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions."

Granting these principles, however, the plaintiff contends that the confession of judgment by the defendant is in substance an admission of the fraud which is alleged in count II. But the state court record does not demonstrate this contention or support it. As noted above, the memorandum made by the state court on January 20, 1981, is to the effect that the plaintiff withdrew both the prayer for exemplary damages—the "request"—and the allegations supporting that request. Then, and only then did the defendant confess judgment. The "judgment entry" later signature stamped with the state court judge's signature recites that defendant confessed judgment "under Count II of plaintiff's petition herein wherein it is alleged in Count II of plaintiff's petition herein that defendant by virtue of certain fraudulent actions damaged the plaintiff in said sum and to which defendant confessed." But the minute entry made by the state court judge is to be granted the greater evidentiary weight in the case of such a conflict between it and the recitations in a formal judgment entry,

for it is a contemporaneous record of the events which then took place.[1]

■ Otherwise, there is no evidence that, in order to secure the advanced commissions or other value, the defendant made any misrepresentation of any fact or his intention or that he received the monies through false pretenses. Even if it is true, as the plaintiff generally contends, that some value went to the defendant after he allegedly accepted employment with a competitor, such evidence is insufficient, without more, to make a case that the plaintiff in any way was misled by the defendant to secure the payment of any money or other value. And, in fact, beyond the bare contention, there is no evidence that any specific sum of money went to the defendant after he started working for a competitor—there is only the mention of the possibility, and this is wholly unsatisfactory as evidence upon which to base a prima facie claim.

In his argument during the course of the trial, counsel for plaintiff contends that defendant's knowledge of the existence of plaintiff's guarantee of his liabilities to O's Gold constitutes some evidence of fraud or of "willful and malicious" conversion of the value owed to the plaintiff. Again, however, as to the fraud issue, there is simply no evidence of any misrepresentation or false pretense as a result of which the liability was created. It has been said that, in determining whether the debtor has an intention to pay when he incurs an obligation, that "(t)o require an overt misrepresentation when hopeless insolvency makes payment impossible is an unduly restricted interpretation of the purposes of the Act." 1A Collier on Bankruptcy para. 17.16, pp. 1640, 1640.1 (1980). But there has been no showing of hopeless insolvency or inability to pay in the evidence in this action.

■ All that is really shown by the plaintiff's evidence, viewed in the light most favorable to him, is that the defend-

---

1. A contemporaneous memorandum of an event is ordinarily considered to be entitled to greater evidentiary weight than another recollection of it "because for every moment of time which elapses between the act of recording, and the occasion of testifying (or making of a subsequent record), the actual recollection must be inferior in vividness to the recollection perpetuated in the record." 5 Wigmore on Evidence section 1669, n. 5 (3d ed. 1940).

**528**

ant received advances against commissions which turned out in a final accounting not to have been earned and that some of the seed corn charged to him or his salesmen was not paid or accounted for. Such failure to account for value is, under the provisions of section 523(a)(4) of the Bankruptcy Code, nondischargeable only if the person failing to account is "acting in a fiduciary capacity" within the meaning of that section. There is no evidence of an express written trust making the defendant a fiduciary as to any sums or value for which he failed to account. In the absence of such an express contractual provision making the defendant a fiduciary, section 523(a)(4) "does not apply to . . . agents, bailees, brokers, factors, partners, and other persons similary situated." *Matter of Whitlock*, 449 F.Supp. 1383, 1386 (W.D.Mo.1978). And finally, even if it could be said that the failure to account amounted to a conversion within the meaning of section 523(a)(6) of the Code, it cannot be said that there is any evidence of wilfulness or malice such as is necessary to a decree of nondischargeability. Counsel suggests that the malice exists in the defendant's going to work for a competitor during the term of his service with the plaintiff. But no specific "intent to harm" the plaintiff is demonstrated by that act, which was ostensibly, if true, an act done to obtain more money and income for the defendant. In order to establish that a conversion is willful and malicious, a "subjective, conscious" intent "to do harm" must be proven. *In re Bellmer*, Civil Action No. 79–6042–CV–SJ (W.D.Mo.1980); *Matter of Nelson*, 10 B.R. 691, 692 (N.D.Ill.Bkrtcy. 1981).

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the plaintiff's action be, and it is hereby, dismissed for failure to make a submissible case.