543 A.2d 377

**MILTON SOMMERS, INC.**

v.

**EQUITABLE BANK, NATIONAL ASSOCIATION.**

**No. 1346, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

July 8, 1988.

Franklin Tyng, Bel Air, and Eugene Hettleman, Baltimore, for appellant.

Stephen J. Hughes and Daniel R. Lanier (Mark D. Gately and Miles & Stockbridge, on the brief), Baltimore, for appellee.

Argued before BISHOP and ROSALYN B. BELL, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

BISHOP, Judge.

In this case we are asked to determine the relative priority rights of two creditors in certain real property owned by Norman Whittington not a party either before the trial court or before this Court.[1] Milton Sommers, Inc., the holder of a confessed judgment note executed by a partnership of which Whittington is one of the ten co-partners, appeals from the judgment of the Circuit Court for Somerset County (Simpkins, J.) which granted declaratory relief to mortgagee Equitable Bank, appellee.

### FACTS [2]

In 1978, Equitable made a "commercial loan" to "Norman T. Whittington, Jr. and Robert L. Chamberlin, Jr., Partners Trading as the Farm Company; Robert L. Chamberlin, Jr. and Norman T. Whittington, Jr., Co–Partners Trading as The Apgar Company; Norman T. Whittington, Jr. and Wanda Lou Whittington, his wife; and Robert L. Chamberlin, Jr. and Patricia M. Chamberlin, his wife". As security for the original loan Equitable took and recorded a mortgage in certain real property, not at issue in the case *sub judice*, owned by the mortgagors.[3]

---

**1.** The parties concede the existence of a valid prior deed of trust in the subject real estate held by, John Hancock Mutual Life Insurance Company, not a party before either the trial court or this Court. The priority fight at issue in the case *sub judice* will determine which party stands behind John Hancock's interest.

**2.** At trial, neither party sought to elicit testimony from any witnesses. Rather, Equitable sought a stipulation as to the facts. Sommers never agreed to a stipulation. In so far as Sommers failed to object to anything during the course of the trial, the trial procedure is not at issue. We distill the facts from the various proffers made by the respective counsel for Equitable and Sommers.

**3.** Sommers does not contest either the validity of Equitable's mortgage or the manner of recordation.

On April 23, 1982, in the Superior Court of Baltimore City (now, the Circuit Court for Baltimore City), Sommers filed a confessed judgment action [4] upon which judgment was entered in the amount of $104,466.68 plus interest and attorney's fees against "Norman T. Whittington, Jr., and Robert L. Chamberlin, Jr., co-partners trading as Shores Company and the Cameron Company". Equitable and Sommers stipulated at trial that the balance due on the judgment as of July 1, 1987 was $152,713.21. Whittington has partially satisfied the judgment by making cash payments totaling $56,293.22.

The docket entries from the Superior Court reflect that "writs" were sent to the Somerset County Sheriff's Department to be served on Norman Whittington and Robert Chamberlin. Nothing in the Superior Court's record indicates that service of notice was ever effected upon Whittington or Chamberlin. The trial court found as a fact that "Whittington, individually, was never served with the notice of the confess judgment."

On May 3, 1982, the Baltimore City confessed judgment was recorded in Somerset County. [5]

On March 22, 1983, almost one year after Sommers filed the confessed judgment action, Equitable and the mortgagors under the 1978 mortgage, entered into a "Mortgage Modification Agreement". In exchange for an additional loan, the mortgagors gave additional security to Equitable to that covered by the 1978 mortgage. This additional security included land in Somerset County known as "Long Farms", the subject of the priority fight in the case *sub*

---

**4.** Actually, Transcontinental Mortgage Company obtained the confessed judgment against Norman Whittington, but Sommers "merged" with Transcontinental and succeeded to the latter's debts, liabilities and interest in the present litigation. Equitable did not contest Sommer's standing to defend the action.

**5.** Equitable does not dispute the validity of the underlying debt to Sommers and does not dispute the manner of recordation of the confessed judgment.

*judice.* Equitable recorded the modification agreement in Somerset County on March 29, 1983.[6] "Long Farms", however, was owned solely by "Norman T. Whittington" at the time of its pledge under the 1983 Modification Agreement.

On January 16, 1986, Equitable filed a one count declaratory judgment action in the Circuit Court for Somerset County against Sommers. Equitable later amended its complaint, adding a second count.[7] Count I of the amended complaint sought a declaration that Sommer's confessed judgment was not a judgment against Norman Whittington personally but against a partnership and as such it would not create a lien against "Long Farms" owned by Whittington individually.[8] Alternatively Count II sought a declaration that Sommer's confessed judgment was not a "final judgment" that would create a lien against "Long Farms".

---

**6.** Sommers does not dispute that Equitable has obtained a valid lien on "Long Farms".

**7.** Sommers argues that "[t]here is no record of the actual filing of the amended complaint...." It appears from the docket entries entered on 11/13/86 and 11/14/86 that Equitable filed a "Request for Leave to File AMended [sic] Complaint for Declaratory Relief, or in the Alternative, Motion for Continuance...." Equitable filed an amended complaint along with its "Request". The trial court's order, however, specifically granted a continuance from the scheduled 11/18/86 trial date until the actual 7/16/87 date. The amended complaint differed from the original complaint by virtue of the addition of Count II, the count upon which declaratory relief was given. Whatever error may have occurred in the presentment of Equitable's amended complaint, Sommers' failure to object at trial and his failure to provide legal argument in support of the alleged error, Rule 1031(D)(5) and (F), constitutes a "waiver" of any error. Rule 1085; *Ellerba v. State,* 41 Md.App. 712, 727, 398 A.2d 1250 (1979), *cert. denied,* 285 Md. 729, 734 (1979).

**8.** The trial court did not make a ruling on Count I of the amended complaint. The trial court did note that Whittington and Chamberlin "were, for a number of years, general partners in numerous businesses in this area. Starting in the mid-seventies all of the businesses ran into financial problems and all have failed. The assets of all of the partnerships were disposed of several years ago". Because the trial court did not make a ruling on Count I, any issue regarding whether Sommers' confessed judgment bound the debtor, Whittington, in his individual capacity is not properly before us. Rule 1085.

In its "Memorandum and Order" the trial court found as a fact that Whittington was never served with notice of Sommer's confessed judgment and ruled in favor of Equitable under Count II of its amended complaint. The trial court issued a formal "Declaration" whereby it declared:

> [T]he failure by Milton Sommers, Inc. to comply with old Rule 645 (new Rule 2–611), in that Norman T. Whittington, Jr. was never served with notice of the confessed judgment obtained by the defendant, precludes Milton Sommers, Inc. from obtaining a lien on the Long Farm parcel superior to Equitable's lien on the Long Farm parcel.

The issue that is dispositive of this case is whether Equitable may attack the Sommers judgment. Sommers argues that

> [t]he former rules governing confession of judgment under which the judgment in this case was secured, similar to the current rules, were designed to alleviate hardships previously imposed on Defendants (debtors) which had sometimes previously resulted from *lack of notice*. The rules were never intended to furnish, to a subsequent mortgagee, a means of contesting priorities. (emphasis in original)

Sommers cites the following passage from *Newark Trust Co. v. Trimble,* 215 Md. 502, 504–505, 138 A.2d 919 (1958), in support of his argument:

> Our present Rule 645 with regard to the entry of a judgment by confession and its requirement for the service of summons on the defendant and its allowance of thirty days within which to move to strike out such a judgment are the outgrowth of the hardships upon defendants in such cases, which sometimes resulted previously from lack of notice and the consequent lack of an opportunity to interpose defenses before such a judgment became enrolled.

This statement supports the principle that Rule 645 [Now Rule 2–611] was created for the benefit of defendant-debt-

ors.  The circumstances under which Equitable may collaterally attack the judgment in this case are limited.

The rule permitting a collateral attack upon a judgment because of the absence of jurisdiction prevails where the want of jurisdiction appears upon the face of the record, or where the record affirmatively shows absence of conditions necessary to give the court jurisdiction to affect the rights of a party.  In support of this rule, it has been declared that were the rule otherwise, it would never be possible to attack collaterally the judgment of a court of general jurisdiction, that the answer to the attack would always be that notwithstanding the evidence or the averment, the necessary facts to support the judgment are presumed.

A fortiori, where a lack of jurisdiction is apparent upon the face of a judgment of a court of limited jurisdiction, the judgment may be attacked collaterally for want of jurisdiction.

46 AM.JUR.2d *Judgments* § 665 p. 821 (1969 Vol. and 1987 Cum.Supp.).

In the case *sub judice*, it is clear that Whittington never received service of process and Sommers has virtually conceded this point.

In *Fisher v. DeMarr*, 226 Md. 509, 515, 174 A.2d 345 (1961), the Court of Appeals said,

It is established that a judgment or decree of a court without jurisdiction is void and may be attacked directly by a party or a privy, if he is not estopped to do so, and collaterally by a stranger whose interests or status would be adversely affected if it were valid, and that a judgment or decree which is merely erroneous or voidable is not, with relatively rare exceptions, subject to collateral attack.

(Emphasis added;  citations omitted.)

There can be no dispute that Equitable's interests would be adversely affected if Sommers holds a valid lien on "Long Farms";  however, based on the record in the case

*sub judice* the court was not without jurisdiction. Also, it appears that the deficiency in the procedure in the case *sub judice* rendered the judgment "merely erroneous or voidable" and, therefore not subject to collateral attack.

The mortgage note at issue contained the following "warrant of attorney" clause:

> The makers, endorsers and guarantors of this note hereby waive presentment for payment, demand for payment, notice of non-payment and dishonor, protest and notice of protest; waive trial by jury in any action or proceeding arising on, out of, under or by reason of this note; ... and the makers, endorsers and guarantors do hereby empower any attorney of any Court within the United States to appear for us, at any time after default, and confess judgment against us for the sum due with costs of suit, and attorney's commission of 10% of the amount due, for collection, and release of all errors, and without stay of execution, and the benefit of any exemption statute now or hereafter existing is hereby waived.

The note was signed by and judgment was entered in the names of "Norman T. Whittington, Jr. and Robert L. Chamberlin Jr., Copartners trading as Shores Company and The Cameron Company."

From 47 Am.Jur.2d *Judgments* § 1103, p. 157 (1969 and 1987 cum supp.) we learn:

> Judgments by confession form no exception to the rule that a court must have jurisdiction before a judgment may be entered. However, the general principle that every reasonable presumption will be indulged in favor of the action of a court of general jurisdiction applies in cases calling in question the regularity of the action of the court in entering a judgment by confession. *Under this rule, it will be presumed that the court had jurisdiction to enter the judgment by confession,* that the agent performed his duty in the authorized manner, and that the proceedings were regular and according to law.

Moreover, there is authority for the view that a confession of judgment by the defendant is a release of errors. (Footnotes omitted and emphasis added)

There may be some possible exceptions to this general statement which are dependent upon the statutes and court rules of the various states. *See* 47 Am.Jur.2d., *Judgments* § 1141, pp. 178–179. Based on our analysis of Maryland Law we hold that the general rule that presumes the jurisdiction of the court applies in this state.

There is no dispute that there was compliance with section (a) of former Rule 645 (present Rule 2–611) which provides:

a. *Entry—Affidavit.*

Judgment by confession may be entered by the clerk upon the filing by the plaintiff of a declaration accompanied by the written instrument authorizing the confession of judgment and entitling the plaintiff to a claim for liquidated damages and supported by an affidavit made by the plaintiff or someone on his behalf stating the amount due thereunder, and indicating the post office address (including street address if needed to effect mail delivery) of the defendant.

Also, there is no dispute that there was no compliance with the service requirement of section (b).

By virtue of section (a), judgment is entered without prior notice to the defendant-debtor. A judgment so entered is not substantially different from any other judgment. *Boyce v. Plitt,* 274 Md. 333, 335, 335 A.2d 101 (1975). Such a procedure does not *per se* violate the due process rights of the debtor. *D.H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 187, 92 S.Ct. 775, 783, 31 L.Ed.2d 124 (1972). Where a judgment by confession is entered by means of a power to do so granted by the debtor in the instrument the judgment becomes effective at the time of its entry. The court in which the judgment is filed obtains jurisdiction over the debtor and retains it. That jurisdiction is based on the debtor's explicit authorization as contained in the note. The

jurisdiction attaches when the judgment is entered. The judgment can be attacked, on the basis of lack of notice, only by the defendant-debtor. The purpose of the notice requirement is to provide the debtor with the opportunity to assert any defense he may have. In the case *sub judice* it is clear that, even though the required notice was not given, the defendant-debtor knew of the judgment and made no effort to dispute it. The fact that at the time of the hearing Whittington, the debtor, had made payments on the judgment amounting to $56,293.22, acknowledged that he had notice as required by the Rule and that he had acquiesced in the judgment.

The deficiency in the procedure, failure to comply with the notice requirement of section (b), does not affect the validity of the judgment but merely makes it subject to attack by the debtor provided he can show that he has a meritorious defense. The confessed judgment may be "opened, modified or vacated" upon the showing of a meritorious defense, *see* Rule 2–611(d),[9] former Rule 645(d)[10] and *Young v. Mayne Realty Co.*, 48 Md.App. 662, 666, 668,

---

9. Rule 2–611(d) states:
   (d) *Disposition of Motion*—If the court finds that there is a substantial and sufficient basis for an actual controversy as to the merits of the action, the court shall order the judgment by confession opened, modified, or vacated and permit the defendant to file a responsive pleading.

10. Former Rule 645(d) stated:
   d. *Disposition of Application.*
   The motion shall be heard promptly by the court. If the evidence presented at the hearing establishes that there are substantial and sufficient grounds for an actual controversy as to the merits of the case, the court shall order the judgment by confession vacated, opened or modified with leave to the defendant to file a pleading and the case shall stand for trial. If the evidence does not establish that there are substantial and sufficient grounds for an actual controversy as to the merits of the case, the judgment shall stand to the same extent as a judgment absolute entered after trial.
   The parties have proceeded upon the assumption that former Rule 645, effective July 1, 1981, governed the requirements by which Sommers' confessed judgment should have been applied. We do not address that assumption, but note that present Rule 2–611 and former Rule 645 are substantially similar.

429 A.2d 296 (1981), thus requiring a trial on the merits. *See Leahy v. McManus*, 237 Md. 450, 454, 206 A.2d 688 (1965) and *Gay Investment Co. v. Angster*, 231 Md. 318, 322–323, 190 A.2d 95 (1963). The Court explained this procedure in *Tyrrell v. Hilton*, 92 Md. 176, 184–185, 48 A. 55 (1900):

> If this judgment was entered "without jurisdiction and is void from the beginning," as was held below, it must be stricken out. *Freeman on Judgments*, sec. 98, and cases there cited. But in such cases the rule seems to have been established that the lien will be preserved to secure the plaintiff from loss, should he afterwards recover at a trial on the merits. *Freeman on Judgments*, sec. 499; *Page v. Wallace*, 87 Ill. 84; *Grazebrook v. McCreedie*, 9 Wendell, 437; *Ellsworth v. Campbell*, 31 Barb. 137. In the case last mentioned, the rule is thus stated: "The course to be pursued in such cases is one which will prevent all possible injury to the defendant, and at the same time save the plaintiff from harm. This can be done by preserving the lien which the plaintiff has acquired by the judgment, and giving the defendant an opportunity to plead, if he has any plea to make, to the merits."

The judgment in the case *sub judice*, regardless of notice, had been recorded among the court records. This placed Equitable on notice of the existence of the judgment which, without further action by Whittington, was valid. It is clear Equitable either failed to do a judgment search or decided to proceed with the "Mortgage Modification Agreement" regardless of the recorded judgment. In either case, it must suffer the consequences.

JUDGMENT REVERSED; CASE REMANDED FOR PROCEEDINGS IN ACCORDANCE WITH THIS OPINION;

COSTS TO BE PAID BY APPELLEE.