786 A.2d 1

**UNITED BOOK PRESS, INC.,**

v.

**MARYLAND COMPOSITION COMPANY, INC.**

No. 2637, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Dec. 3, 2001.

462

Anthony P. Palaigos (Thomas A. Bowden and Blum, Yum-kas, Mailman, Gutman & Denick, P.A., on the brief,) Balti-more, for appellant.

Marvin I. Singer (Ira K. Himmel, on the brief,) Baltimore, for appellee.

Argued before JAMES R. EYLER, SONNER, and MARVIN H. SMITH (Ret., specially assigned), JJ.

JAMES R. EYLER, J.

United Book Press, Inc., appellant, brought suit in the Circuit Court for Baltimore County against Maryland Composition Co., Inc., appellee, alleging breach of contract and seeking indemnity. Appellant appeals from a judgment entered in favor of appellee after the circuit court, at trial, granted appellee's motion for judgment at the close of appellant's case. In addition to general principles of contract law, including the duty to mitigate damages, the parties have urged consideration of judicial estoppel, equitable estoppel, waiver, merger, accord and satisfaction, and the preclusive effect of a confessed judgment. For reasons that follow, we shall reverse the judgment of the circuit court and remand for a new trial.

### Factual Background

Because we are reviewing the grant of a motion for judgment rendered at the close of appellant's case, we shall summarize the evidence introduced by appellant. Appellant was in the business of manufacturing books. It entered into a contract with Strathmore Directories, Ltd. (Strathmore), to print a "Who's Who" directory. Strathmore provided appellant with a computer disc containing the text to be included in the book. Appellant entered into a contract with appellee, a typesetter, to typeset the text. Appellant gave the disc to appellee. Appellant presented testimony that appellee was obligated to proof read its work.

Appellee omitted the "K" section from the type that was set, and the error was not discovered until after 4,962 books had been printed and delivered to Strathmore. Strathmore learned of the error from one of its customers. It advised appellant, and appellant advised appellee. According to testimony at trial, appellee acknowledged that the "K" section had

been deleted from its typeset and explained that it occurred when the disc was converted to a format that was compatible with its type setting system.

Strathmore refused to pay for the books. Appellant attempted to correct the error in part by providing a limited number of the missing "K" sections to be placed in some of the books. This was done at a cost of $3,000.00. Appellant contacted appellee and asked appellee to split the cost. Appellee agreed and, subject to a $1,500.00 credit, appellant paid appellee's bill. Strathmore continued to refuse to pay its bill.

On June 30, 1999, appellant filed a complaint in the Circuit Court for Baltimore County against Strathmore. Appellant sought a judgment by confession based on (1) the contract between it and Strathmore which contained a confessed judgment clause; and (2) a supporting affidavit. Appellant alleged in the complaint that, pursuant to the contract between it and Strathmore, appellant provided page proofs to Strathmore for approval prior to printing the books, and the books as printed conformed to the page proofs as approved by Strathmore. Appellant further alleged that it delivered 4,962 books to Strathmore and issued invoices in the total amount of $97,667.64. Appellant asserted that Strathmore refused to pay the invoices based upon the absence of the "K" section in the books even though that section was absent from the page proofs that had been approved by Strathmore. The attached affidavit, in pertinent part, stated that the amounts claimed were "justly due and payable."

On June 30, 1999, a confessed judgment was entered in favor of appellant in the amount of $97,667.64, attorneys fees in the amount of $14,650.15, and costs. On July 13, 1999, a notice of confessed judgment was served on Strathmore. The notice advised Strathmore, a nonresident, that pursuant to Rules 2–611(c) and 2–321(b)(1), it had 60 days from the date of service to file a motion to open, modify, or vacate the judgment. On August 26, 1999, within that 60 day period, appellant entered into a settlement with Strathmore. Pursuant to the settlement, Strathmore paid appellant $75,000.00 and the

parties executed a mutual general release. Appellant released Strathmore from any further liability but did not release any other entities. The confessed judgment was not vacated, and there was no motion filed seeking to vacate it. The judgment was not entered satisfied on the record.

On July 6, 1999, appellant filed a complaint against appellee in the case now before us. The complaint alleged breach of contract and indemnity. In pertinent part, appellant alleged that appellee had breached its contract with appellant by omitting the "K" section from the directory, and as a result, Strathmore had refused to pay for the books. Appellant also alleged that "if it is found that [appellant] breached its contract with Strathmore, then [appellee's] breach of contract proximately caused [appellant's] breach". Appellant sought damages in the amount of $97,667.64, attorneys fees, interest, and costs.

On January 4, 2001, the case was tried non jury. At trial, appellant claimed damages in the amount of $22,667.64, its invoice amount less the $75,000.00 received pursuant to the Strathmore settlement. At the close of appellant's case, the circuit court granted appellee's motion for judgment.

Because we are called upon to apply the doctrines argued by the parties to the oral opinion rendered by the trial court, we shall quote liberally from the trial court's opinion. In pertinent part, the court stated:

"So there is a contract and I think this case can be decided under simple contract law. United Book Press had a contract with Strathmore. The contract said if United Book Press publishes this book Strathmore will pay $97,000. In fact, United Book Press, their position is, we published the book. Strathmore didn't pay for it so they confessed judgment. They obtained a judgment against Strathmore for not paying the $97,000 that they agreed to pay to publish the book.

It's alleged by the Plaintiff that Strathmore's position was, we don't have to pay you for this book, because it doesn't have a K section in it. Sounds like a pretty good

defense. What good is a book that leaves out—I can't imagine anybody, can't imagine too many people buying a book that has that deficiency in it. But, United Book says, that would have been a good defense and you may not have had to pay us the $97,000 except for the fact that you are the one that said, we will pay for this published book, even without the K section we will pay for this book that you intend to publish because nobody took the time at Strathmore to review it, to look at it, to be able to say, no, we are not going to pay for that book because that's without a K section. We waive the right to do that. We are not going to check the book blues. We are not going to look at that. We are going to approve, whatever you publish we are paying for.

. . . .

[T]hey pay for it anyway, $75,000, because that's probably a real good argument they—assessment, you know, we blew it. We didn't look at the book blues, we didn't tell United Book Press, wait a minute, don't print 4900 copies of this thing, it's defective. We are not paying for it.

So, in fact, United Book Press had a right and did, in fact, get a judgment against Strathmore for the $97,000 plus attorney's fees and interest. United Book Press had a right to collect, to execute on that judgment from Strathmore. They choose [sic] not to do it. They chose to accept a settlement of the 97,000 plus 14,000. They chose to compromise what they were entitled to. That choice can't serve as a basis of liability against Maryland Composition.

Maryland Composition—and, in fact, what's relevant it seems to me, is even after United Book Press knew that Maryland Composition didn't completely fulfill their contract with United Book Press, apparently United Book Press thought it was substantial performance because they paid them for it.

. . . .

That, in fact, United Book Press paid the contract that they had with Maryland Composition so they must have thought

it was substantial performance. It seems to me that the damages that United Book Press sustained are solely attributable to its decision to accept less than it was entitled to accept or get from Strathmore. Well, that can't be assessed against Maryland Composition, because United Book Press makes that decision to compromise its claim and take less money than it's entitled to.

If, in fact, they had taken what they were entitled to from Strathmore, if they had executed on their judgment that was entered in this court, that was never struck, they would have gotten everything that they were entitled to. Why should Maryland Composition pay for that? As a matter of contract law it seems to me that as a matter of law they are not obligated, they are not liable for that amount of money. Now, if United Book Press feels that Maryland or, that Maryland Composition didn't fulfill its contract with them, and I have already stated, one can't understand why they would then pay them for the contract."

### Discussion

The circuit court, in granting appellee's motion for judgment, expressly relied on general principles of contract law as the conceptual basis for its decision. It did not expressly refer to the other doctrines argued by the parties on appeal.

Appellant's position may be summarized as follows. First, there was uncontradicted evidence that appellee breached its contract with appellant. Second, the confessed judgment against Strathmore was not final when entered, and appellant settled its claim with Strathmore before the judgment became final; thus, the confessed judgment had no preclusive effect. Third, appellant's settlement with Strathmore represented a reasonable mitigation of damages with respect to its claim against appellee. Appellee asserts that the circuit court judgment should be affirmed based on theories of judicial estoppel, waiver, equitable estoppel, merger, and accord and satisfaction.

We shall shortly begin our analysis by addressing the theories advanced by appellee to support the circuit court's ruling. First, however, we point out an issue that is not before us. After a confessed judgment was entered in favor of appellant against Strathmore, the parties entered into a settlement and executed a mutual release. No order of satisfaction was filed in that case, however, and there was no docket entry marking the case satisfied. Consequently, we do not have before us the effect of such an entry which would give rise to the question of whether a party could go behind that entry and attempt to establish that the judgment was only partially and not completely satisfied. *See, e.g., Franzen v. Dubinok,* 290 Md. 65, 427 A.2d 1002 (1981). What we do have before us is the effect of a confessed judgment that was never vacated and was not marked satisfied.

### Judicial Estoppel

Appellee contends appellant sought and obtained a judgment against Strathmore for the full amount of the damages claimed on the basis of an assertion, under oath, that Strathmore was solely responsible for the alleged loss. Appellee concludes that appellant is judicially estopped from now asserting a right to collect an amount from appellee which appellant was legally entitled to collect from Strathmore.

Appellee relies on the following cases, which we shall discuss. In *Edes v. Garey,* 46 Md. 24 (1877), residuary legatees filed a complaint in equity to enforce the personal liability of sureties on a testamentary bond, based on alleged wrongdoing by the executor. In a prior proceeding, the plaintiffs had alleged facts totally inconsistent with the wrongdoing and totally inconsistent with any alleged loss. *Edes,* 46 Md. at 41. The Court found plaintiffs were estopped from denying those facts. *Id.* at 42.

In *Hall v. McCann,* 51 Md. 345 (1879), there was an attack on a lien securing an indebtedness on the ground that the indebtedness had been paid. The Court held that it would not act because the claimant had testified in another proceeding that the plaintiff had no interest in the lien. *Hall,* 51 Md. at 351.

The Court of Appeals, in *Van Royen v. Lacey,* 266 Md. 649, 296 A.2d 426 (1972), on an appeal from a motion to enforce a judgment (the third appeal in the litigation) applied judicial estoppel where the plaintiff had alleged during the trial and prior appeals that the defendants were joint tenants but subsequently sought to allege a tenancy by the entireties. *Van Royen,* 266 Md. at 651–52, 296 A.2d 426. The plaintiff was estopped from doing so.

In *Stone v. Stone,* 230 Md. 248, 186 A.2d 590 (1962), a widower, during the probate of his wife's estate, took the position that certain securities were part of the corpus of a trust of which he was trustee. Subsequently, in an action for distribution of the securities upon termination of the trust, he took the position that the securities were his individual property. Applying estoppel, the Court stated:

> Under the unique situation which prevailed we find that appellant was estopped from successfully contending that when he made and executed these statements and documents he was acting only as a co-administrator of his wife's estate and not as trustee of the trust which he had established. 'The test [of estoppel by admissions] is not as to whether the admission is true, but as to whether it would be contrary to public policy and good morals to allow it to be disputed.' Jones, *Evidence,* § 374. 'Generally speaking, a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts and another will be prejudiced by his action.' 19 Am.Jur., *Estoppel,* § 50. Under these circumstances appellant is estopped from denying that when he made or executed these instruments he did not have knowledge of the consequences to the trust nor of the injury to the beneficiaries if he later denied them or that he was acting in the capacity of trustee.

*Stone,* 230 Md. at 253, 186 A.2d 590.

In *Wilson v. Stanbury,* 118 Md.App. 209, 702 A.2d 436 (1997), the plaintiff filed suit as a result of a motor vehicle

accident and alleged in the complaint that the accident was caused solely by the named defendant. The plaintiff filed the suit, knowing that the defendant was not negligent, because the plaintiff had missed the statute of limitations with respect to the negligent party. *Wilson,* 118 Md.App. at 210, 702 A.2d 436. Subsequently, after settling that action, the plaintiff filed a malpractice action against his attorney, alleging that the attorney was negligent in missing the statute of limitations. The Court applied judicial estoppel and barred the claim for the express purpose of protecting the courts from being used inappropriately. *Id.* at 215, 702 A.2d 436 (recognizing the similarity between judicial estoppel and the "clean hands" doctrine).

In *Kramer v. Globe Brewing Co.,* 175 Md. 461, 2 A.2d 634 (1938), a personal injury action, the defendant stated in a pleading in a prior case that plaintiff was the defendant's employee, that the injuries arose out of the employment, and that the defendant had complied with workers compensation laws. *Kramer,* 175 Md. at 464–65, 2 A.2d 634. In reliance on that statement, the plaintiff dismissed the action and filed a workers compensation claim. *Id.* at 465, 2 A.2d 634. The Court held that the defendant was estopped to deny in the workers compensation proceeding that the plaintiff was its employee. *Id.* at 471, 2 A.2d 634.

Finally, in *WinMark v. Miles & Stockbridge,* 345 Md. 614, 693 A.2d 824 (1997), the question before the court was whether a debtor's nondisclosure of a claim as an asset during a reorganization under Chapter 11 of the bankruptcy code barred the debtor from post-confirmation litigation of that claim against defendants not creditors in the bankruptcy action. The Court did not apply judicial estoppel but, as this Court did in *Wilson,* noted that the policy underlying judicial estoppel is the same as that underlying the clean hands doctrine. *WinMark,* 345 Md. at 627–28, 693 A.2d 824 (citing *Manown v. Adams,* 89 Md.App. 503, 598 A.2d 821 (1991)). The Court explained that the doctrine is to protect the courts from having to reward inequitable conduct. *Id.* at 628, 693 A.2d 824. The Court also recognized the difference between

judicial estoppel and equitable estoppel, noting that the former focuses on the connection between litigants and the judicial system, and the latter focuses on the relationship between the parties. *Id.* at 623, 693 A.2d 824 (citing *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414, 419 (3d Cir.1988)).

In the case before us, even though the books in question were defective, appellant had at least a colorable claim against Strathmore based on the fact that Strathmore, as part of its contract, agreed to review the page proofs and check them for accuracy and completeness, and it did so. Appellant also had at least a colorable claim against appellee based on its omission of the "K" section.

■ It is hornbook law that a claimant is only entitled to one satisfaction, *i.e.,* one payment of its loss. *See Lanasa v. Beggs,* 159 Md. 311, 320, 151 A. 21 (1930) ("It is neither just nor lawful that there should be more than one satisfaction for the same injury, whether that injury be done by one or more."); *Mathews v. Gary,* 133 Md.App. 570, 582, 758 A.2d 1019 (2000) ("The rationale for this rule is that the remedy provided to an injured person is to receive only one full compensation for the wrong done to him."); *Huff v. Harbaugh,* 49 Md.App. 661, 670, 435 A.2d 108 (1981) ("[T]here can be but one recovery for a single wrong."). It is undisputed that the amount of appellant's loss was $97,667.64. There is evidence that, while appellant's claim against Strathmore was settled and released, the full amount of appellant's loss was not satisfied.

Appellant entered into two different contracts and had two different causes of action against different entities, albeit one loss. Thus, we are not faced with splitting a cause of action and the question of when that is permitted. *See, e.g., Dill v. Avery,* 305 Md. 206, 502 A.2d 1051 (1986) (applying the doctrine of *res judicata* to prohibit plaintiffs from splitting a cause of action); *Lake v. Jones,* 89 Md.App. 579, 598 A.2d 858 (1991) (permitting a cause of action to be split where defendant knowingly acquiesced in the two law suits); Restatement

(Second) of Judgments, § 24(1) (1980) (when a valid and final judgment extinguishes a plaintiff's claim, it extinguishes all rights of the plaintiff to remedies against the defendant with respect to all or any portion of the transaction or series of connected transactions out of which the action arose); Md. Code (1957, 1998 Repl.Vol.), § 11–102 of the Courts and Judicial Proceedings Article (if debt is not completely satisfied, the aggrieved party may proceed against a person jointly liable on a contract).

■ In our view, appellant's present claim is not barred by judicial estoppel. Appellant is not seeking to have inequitable conduct endorsed by the court system. Appellant's claims are not inconsistent. Appellant asserted that both Strathmore and appellee were liable to it, but is only seeking to achieve one satisfaction. In its complaint against Strathmore, appellant asserted that Strathmore was liable, but did not assert that Strathmore was the only entity liable to it. Appellant's complaint in this case, in the indemnity count, expressly recognized that its claim would be determined by resolution of the question of whether it breached the contract with Strathmore.

In sum, appellant, at the time it filed the two lawsuits, had sustained a loss in the amount of $97,667.64. In claims for that amount against Strathmore and appellee, depending on the determination of liability and resultant damage, appellant could potentially collect from Strathmore, from appellee, or from some combination of the two. It could not collect more than the full amount of its loss, however, and it could not obtain a judgment in the full amount of its loss against both Strathmore and appellee, because they could not be jointly and severally liable.

■ Appellant is not judicially estopped from proceeding herein, but it does have the burden of proving that the resolution of its case with Strathmore was fair and reasonable. *See Waters v. United States Fidelity & Guaranty Co.,* 328 Md. 700, 720, 616 A.2d 884 (1992) (remanding case for trial court's determination whether the settlement was fair and reason-

able); *Huff v. Harbaugh,* 49 Md.App. at 673–74, 435 A.2d 108 (finding that the remedy was adequate and fair without constituting a double recovery); *M & R Contractors & Builders, Inc. v. Michael,* 215 Md. 340, 354–55, 138 A.2d 350 (1958) (mitigation of damages must be reasonable).

### Merger

■ Appellee argues (1) that the confessed judgment entered against Strathmore was a final judgment when entered unless vacated, and it was not vacated; and (2) once a final judgment was obtained, the underlying claim was extinguished because it merged into the judgment. Consequently, appellant has no claim to bring against appellee.

■ We do not dispute the general proposition that a confessed judgment, if never vacated, is a final judgment and constitutes a lien from the date that it was entered. *See S.W. Barrick & Sons, Inc. v. J.P. Councill Co.,* 224 Md. 138, 166 A.2d 916 (1961); *Milton Sommers, Inc. v. Equitable Bank,* 76 Md.App. 13, 543 A.2d 377 (1988). Nor do we dispute the proposition that a claim merges into a judgment obtained with respect to that claim. *See* Restatement (Second) of Judgments, § 18, cmt. a (1982) (if a valid and final judgment is in favor of a plaintiff, the claim is extinguished and merged into the judgment. It is immaterial whether the judgment was after verdict, consent, confessed, or default.). The cause of action on the contract between appellant and Strathmore merged into the judgment against Strathmore, and in addition, it was released. The cause of action against appellee is a separate cause of action on a separate contract between appellant and appellee. Appellant's claim against appellee did not merge into its judgment against Strathmore.

### Waiver and Equitable Estoppel

Waiver has been defined as " . . . the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of that right; waiver may result from an express agreement or be inferred from circum-

stances." *One Twenty Realty Co. v. Baer,* 260 Md. 400, 408, 272 A.2d 377 (1971). Equitable estoppel has been described as ". . . the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy." *Knill v. Knill,* 306 Md. 527, 534, 510 A.2d 546 (1986) (quoting 3 J. Pomerory, *Equity Jurisprudence,* § 804 (5th ed.1941)).

■ Appellee contends that these doctrines apply because appellant accepted appellee's performance, including additional work by appellee, and thus, appellant should be barred from pursuing its action against appellee. These doctrines are fact dependent and there was no finding of fact by the circuit court to support the application of either of these doctrines. As near as we can determine, the circuit court's decision was not premised on the application of either of these doctrines as a matter of law, and we cannot determine that they apply as a matter of law. On remand, in any new trial, these doctrines may be relevant and even determinative.

### Accord and Satisfaction

Appellee asserts there was an accord and satisfaction because appellant asserted a breach of contract claim against appellee and entered into an agreement with appellee to supply additional work and to reduce the contract price. The comments with respect to merger and equitable estoppel apply equally here. Again, in any new trial, this doctrine may be relevant and even determinative.

### Preclusive Effect of the Confessed Judgment

■ The doctrines of collateral attacks on judgments, *res judicata,* and collateral estoppel, although distinctly different, derive from the need to provide certainty in the law by protecting final judgments. *Klein v. Whitehead,* 40 Md.App.

1, 12, 389 A.2d 374 (1978). Collateral attacks on judgments are prohibited in order to stop a challenge to the validity of a final judgment, while *res judicata* and collateral estoppel prevent a party from subsequently challenging the effect of a prior judgment. *Id.* at 21, 389 A.2d 374. The functions of *res judicata* and collateral estoppel are "to avoid the expense and vexation of multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibilities of inconsistent decisions." *Colandrea v. Wilde Lake Community Ass'n, Inc.,* 361 Md. 371, 387, 761 A.2d 899 (2000) (citations omitted). *Res judicata,* or claim preclusion, bars a lawsuit between parties involving claims that were litigated or should have been litigated in a prior proceeding between the same parties. *Id.* at 388, 761 A.2d 899. Collateral estoppel, or issue preclusion, bars the relitigation of specific issues of fact actually litigated in a prior action, where the party against whom the doctrine is being applied was privy to the first suit. *Id.* at 388–89, 761 A.2d 899. Where *res judicata* requires consistency of the parties from both lawsuits, "nonmutual" collateral estoppel differs.[1] "The foundation of the rule of nonmutual collateral estoppel is that the party to be bound must have had a full and fair opportunity to litigate the issues in question." *Welsh v. Gerber Prods., Inc.,* 315 Md. 510, 518, 555 A.2d 486 (1989).

With respect to those doctrines, defensive nonmutual collateral estoppel seems to be most applicable to the unusual facts before us. Although appellee was not a party to the first lawsuit, applying defensive nonmutual collateral estoppel, assuming the confessed judgment had any preclusive effect at

---

1. "Offensive use of nonmutual collateral estoppel occurs when a plaintiff seeks to foreclose a defendant from relitigating an issue the defendant has previously litigated unsuccessfully in another action against a different party. Defensive use of nonmutual collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against a different party." *Welsh v. Gerber Prods., Inc.,* 315 Md. 510, 518 n. 6, 555 A.2d 486 (1989) (citing *United States v. Mendoza,* 464 U.S. 154, 159 n. 4, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984)).

all, might bar appellant's present claim.[2]  The judgment would establish Strathmore's liability to appellant but would also establish the fact that Strathmore was liable for the full amount of the damage; thus, there would be no damages recoverable from appellee.  We need not determine if collateral estoppel applies because, even assuming the facts in the instant case satisfied its requirements, we hold that the confessed judgment does not have preclusive effect.

■■■  As a general proposition, for collateral estoppel to apply, the issue must have been actually litigated and be essential to the judgment. *See Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 555 A.2d 502 (1989).  The specific question before us, therefore, is whether the "actually litigated" requirement is satisfied by a confessed judgment.  Restatement (Second) of Judgments, § 27, states that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or different claim."  Restatement (Second) of Judgments, § 27 (1980).  Comment (e) states that "[a] judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action." *Id.* It goes on to state that "[i]n the case of a judgment entered by confession, consent, or default, none of the *issues* is actually litigated," and the rule "does not apply with respect to any *issue* in a subsequent action." [3] *Id.* (emphasis added).

Maryland, in addition to other jurisdictions, has recognized the principle in comment (e). *See Welsh*, 315 Md. at 520–21,

---

**2.** It is unclear whether the unusual facts presented fit the collateral estoppel paradigm.  Normally, in both forms of nonmutual collateral estoppel "the party against whom estoppel is asserted has litigated and lost in an earlier action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979).  Here, by virtue of the confessed judgment, appellant won in the earlier action.

**3.** Section 27 relates to issue preclusion.  We note that the outcome may be different under the doctrine of *res judicata,* or claim preclusion, which is beyond the scope of this opinion.

555 A.2d 486 (citing Restatement (Second) of Judgments § 27, and holding that a consent judgment did not have preclusive effect); *Porter Hayden Co. v. Bullinger,* 350 Md. 452, 713 A.2d 962 (1998) (default judgment had no preclusive effect where issues not actually litigated); *Jones v. Baltimore City Police,* 326 Md. 480, 488, 606 A.2d 214 (recognized that although probation before judgment was considered final for the purpose of appeal, it was not a final judgment for purpose of issue preclusion); *Hunter v. Hunter,* 17 B.R. 523, 526 (Bankr.W.D.Mo.1982) ("But collateral estoppel is inappropriate when the prior judgment was a consent judgment or a confessed judgment without any hearing or determination of the merits by the court itself."). *See also Scosche Industries, Inc. v. Visor Gear, Inc.,* 121 F.3d 675 (Fed.Cir.1997); *In re Young,* 91 F.3d 1367 (10th Cir.1996); *Mallory v. Eyrich,* 922 F.2d 1273 (6th Cir.1991); *Pope v. The Gap,* 125 N.M. 376, 961 P.2d 1283 (1998); *State ex rel. Martinez v. Kerr–McGee Corp.,* 120 N.M. 118, 898 P.2d 1256 (1995); *Meadows v. Wal–Mart Stores,* 207 W.Va. 203, 530 S.E.2d 676 (1999); Fleming James, Jr., *Consent Judgments as Collateral Estoppel,* 108 U.Pa. L.Rev. 173 (1959); Note, *The Consent Judgment as an Instrument of Compromise and Settlement,* 72 Harv.L.Rev. 1314 (1958).

▆▆▆▆▆▆ A confessed judgment, when not actually litigated, even though final, ordinarily fails the "actually litigated" requirement of collateral estoppel. In this regard, a nonlitigated judgment by confession is akin to a consent judgment. When parties agree in advance to confess judgment upon the occurrence or nonoccurrence of some condition, the parties are expressly consenting to judgment.

▆▆▆▆ Although the issue in *Welsh v. Gerber Products, Inc.,* 315 Md. 510, 555 A.2d 486 (1989), was whether a consent judgment had preclusive effect, the holding is instructive here.[4] After analyzing the requirements for collateral estop-

---

4. The Court of Appeals of Washington recently discussed the preclusive effect of a confessed judgment relying on consent judgment case law.

pel, the Court stated, ". . . litigation of the issue of damages is not precluded by the entry of a consent judgment unless that issue was actually litigated, or the parties intended preclusion of that issue. We reject as unrealistic the notion that every consent judgment necessarily embodies actual litigation of the issue of damages." *Welsh*, 315 Md. at 522, 555 A.2d 486. Similarly, not every confessed judgment represents actual litigation of damages for purposes of collateral estoppel.

In determining whether an issue has been actually litigated, courts may look beyond the judgment to examine the pleadings and evidence presented in the prior case. *See Colandrea*, 361 Md. at 391–92, 761 A.2d 899 ("[F]or the doctrine of collateral estoppel to apply, the probable fact-finding that undergirds the judgment used to estop *must be scrutinized* to determine if the issues raised in that proceeding were actually litigated, or facts necessary to resolve the pertinent issues were adjudicated in that action.") (emphasis added). For example, the U.S. Bankruptcy Court for the Southern District of New York gave a confessed judgment preclusive effect where the evidence indicated the issue had been extensively litigated. *In re Weiss*, 235 B.R. 349, 357 (Bankr.S.D.N.Y.1999) (citing cases that discuss whether an issue was actually litigated). *See also MPC, Inc. v. Kenny*, 279 Md. 29, 36, 367 A.2d 486 (1977) (remanding case to determine what facts and issues were actually litigated in prior proceeding where consent judgment was entered into during post-trial settlement). If the pleadings and other materials are unclear, extrinsic evidence can be used to determine what issues were actually litigated and whether the

---

*Pederson v. Potter*, 103 Wash.App. 62, 11 P.3d 833, 836–37 (2000) ("Because the confession of judgment is a type of consent judgment, the cases dealing with consent judgments are persuasive.") The court, finding a confessed judgment was a final judgment, distinguished *res judicata* from collateral estoppel, and held where collateral estoppel would not bar relitigation, *res judicata* barred a subsequent claim between the same parties, over the same rights and liabilities, under the same agreement already decided. *Id.*

record adequately reflects those issues. Restatement (Second) of Judgments, § 27 cmt. f (1980).[5]

■ In the case before us, there is extrinsic evidence indicating that not only was the prior action not litigated, it was settled before the time elapsed for Strathmore to file a motion to open, vacate, or modify the confessed judgment. Presumably, the parties could have agreed that Strathmore would file a motion to vacate the judgment and that appellant would consent to it, thus extinguishing the prior judgment. That was not done but, under the circumstances, the judgment should not have preclusive effect.

Our interpretation of the circuit court opinion in this case is that the court ruled that no damages were recoverable against appellee, even if it breached its contract, because of the preclusive effect of the confessed judgment. Consequently, we vacate the judgment and remand for further proceedings consistent with this opinion.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

---

5. In determining whether an issue was "actually litigated" in the prior action, the court may look to the intent of the parties. *Welsh*, 315 Md. at 522, 555 A.2d 486 (quoting 1B *Moore's Federal Practice* § 0.444[3] at 814 (2d ed. 1988) ("[A] preclusion ought to result from a judgment on an agreement, to the extent that the parties agree to be precluded.")). The *Welsh* Court rejected the nonmutual collateral estoppel argument, finding that the parties did not intend the issue of damages in the consent judgment to have preclusive effect. *Id.* at 525, 555 A.2d 486.